Ryan M. Lapine (SBN 239316)
*rlapine@steptoe.com*
**STEPTOE LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile:  (213) 439-9599

Attorneys for Defendant
PERPETUAL ALTRUISM, LTD

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF  CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| TOMMMY ALASTRA PRODUCTIONS, INC., a California corporation, | CASE NO. 2:25-cv-01257-AB-KES |
| | Hon. André Birotte, Jr. |
| Plaintiff, | |
| v. | **DEFENDANT PERPETUAL ALTRUISM, LTD'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| HUGO MCDONAUGH, an individual; PERPETUAL ALTRUISM, LTD a U.K. limited liability company, and DOES 1-20, inclusive, | |
| Defendants. | [Filed concurrently with Declaration of Ryan M. Lapine and [Proposed] Order] |
| | Date:        March 28, 2025<br>Time:        10:00 a.m.<br>Crtrm.:      7B |
| | Action Filed:  February 14, 2025<br>Removal:      February 14, 2025<br>Trial Date:    None Set |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on March 28, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 7B of the above-titled Court, located at 350 West First Street, Los Angeles, CA 90012, defendant Perpetual Altruism, LTD ("PA") will and hereby does move to dismiss plaintiff Tommy Alastra Productions, Inc.'s ("TAP") Complaint filed against PA and Hugo McDonaugh ("McDonaugh") (collectively "Defendants").

This motion is made pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that TAP's claims for breach of contract, promissory estoppel, fraud, declaratory relief and injunctive relief fail to state a claim upon which relief can be granted.

TAP's claim for breach of contract fails to the extent it is based upon PA's refusal to: (1) permit TAP a seat on PA's board; and (2) indemnify TAP with relation to purported third party claims and related attorneys' fees. The parties' operative amended agreement merely permits TAP board observer rights, as opposed to a seat on PA's board.  TAP is also not entitled to indemnification for purported expenses and attorneys' fees it incurred in making purported contracts with third parties because the parties' underlying amended agreement expressly prohibited TAP from attempting to bind PA to third party contracts.  Given that TAP's claim for indemnification would be tantamount to it being permitted to bind PA to third party agreements, this claim is barred by the express terms of the operative agreement.

TAP's promissory estoppel claim fails because it is based upon a Memorandum of Understanding ("MOU") and related pre-contractual communications that are not legally binding as a matter of law.  Indeed, not only does the MOU expressly state that it was not intended to be legally binding among the parties, but the parties' operative amended agreement was executed nearly six

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

months after the MOU and is fully integrated.  As such, TAP cannot seek to enforce the alleged representations in the MOU and/or other pre-contract communications upon which its promissory estoppel claim is based.

TAP's fraud claim fails for the same reasons as the promissory estoppel claim; i.e., it is based upon non-binding representations made in the MOU and pre-contract communications that were not included in the parties' integrated agreement. Moreover, the fraud claim fails for the additional reason that it is based, in part, on statements regarding future events, as opposed to existing facts, that are not actionable as a matter of law.

This motion is based on the instant notice, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the complete court file, including the records and pleadings on file in this matter, and any other oral or documentary evidence that may be presented to the Court at the time of the hearing. Local Rule 7-3 Compliance.  This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which conference took place between lead counsel Ethan Bearman for Plaintiff and lead counsel Ryan Lapine for Defendant.

Dated:  February 20, 2025                    **STEPTOE LLP**


By: _/s/ Ryan M. Lapine_
Ryan M. Lapine
Attorneys for Defendants,
HUGO MCDONAUGH AND
PERPETUAL ALTRUISM, LTD

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

# **TABLE OF CONTENTS**

**PAGE**

I.     INTRODUCTION ............................................................................. 1

II.    RELEVANT FACTUAL ALLEGATIONS AND BACKROUND ................. 3

    A.    TAP Alleges The Parties Entered Into A Series Of Agreements ........... 3

    B.    TAP's Breach Of Contract Claim Is Based On Selective
       Citations Of The AMA ..................................................................... 4

    C.    TAP's Claims Are Otherwise Based on Non-Actionable
       Statements ...................................................................................... 6

III.   LEGAL STANDARD ....................................................................... 8

IV.    ARGUMENT .................................................................................. 9

    A.    The Court May Properly Consider The Agreements .......................... 9

    B.    TAP's Claim For Breach Of Contract Is Subject To Dismissal To
       The Extent It Is Based On Board Rights And Indemnification ........... 10

       1.    TAP Does Not Have Board Rights ........................................ 10

       2.    TAP's Request To Enjoin PA's Board Must Be Dismissed ...... 11

       3.    TAP Lacked Authority To Bind PA And/Or Incur
          Expenses .......................................................................... 12

    C.    TAP's Promissory Estoppel Claim Fails ........................................ 13

       1.    TAP Cannot Enforce Non-Binding Terms Of The MOU ......... 14

       2.    Promises Made Prior To The AMA Are Unenforceable ........... 15

    D.    TAP's Fraud Fails ....................................................................... 19

       1.    TAP Cannot Plead Justifiable Reliance ................................. 20

       2.    Statements Of Future Events Are Not Actionable ................... 21

V.     LEAVE TO AMEND SHOULD BE DENIED ........................................ 22

VI.    CONCLUSION ............................................................................. 23

CERTIFICATE OF SERVICE ................................................................. 27

---

i

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

# TABLE OF AUTHORITIES

PAGE

## CASES

*A.R. Thomson Grp. v. Harbor Seal Inc.*
   2020 WL 3628712, at *5 (C.D. Cal. May 19, 2020) ....................................... 14

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ......................................................................................... 9

*Bell Atlantic Corp. v. Twombly*
   500 U.S. 554 (2007) ......................................................................................... 9

*Cahill v. Liberty Mut. Ins. Co.*
   80 F.3d 336 (9th Cir. 1996) ............................................................................. 9

*Chavez v. CITImortgages, Inc.*
   2012 WL 12895843, at * 4 (C.D. Cal. Dec. 10, 2013) .................................. 16

*Cultiv8 Ints. LLC v. Rezai*
   2020 WL 12893816, at *3 (C.D. Cal. Dec. 17, 2020) ................................... 14

*Duffents v. Valenti*
   161 Cal. App. 4th 434, (2008) ....................................................................... 19

*EPA Real Est. P'ship v. Kang*
   12 Cal. App. 4th 171 (1992) .......................................................................... 16

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*
   868 F. Supp. 2d at 992 ................................................................................... 19

*Gentry v. eBay, Inc.*
   99 Cal. App. 4th 816 (2002) .......................................................................... 21

*Glenn K. Jackson Inc. v. Roe*
   273 F.3d 1192 (9th Cir. 2001) ....................................................................... 20

*Green Hills Software, Inc. v. Safeguard Scis. & SPC Priv. Equity Partners*
   33 F. App'x 893 (9th Cir. 2002) ..................................................................... 21

*Hadland v. NN Investors Life Ins. Co.*
   24 Cal. App. 4th 1578 (1994) ........................................................................ 20

*Horne v. Harley-Davidson*
   660 F. Supp. 2d 1152 (C.D. Cal. 2009) ........................................................ 16

*J.B. Enterprises Int'l, L.L.C. v. Sid & Marty Krofft Pictures Corp.*
   2003 WL 21037837, at *3 (C.D. Cal. Mar. 3, 2003) .............................. 13, 14

*Knievel v. ESPN*
   393 F.3d 1068 (9th Cir. 2005) ......................................................................... 9

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

*Menlo Logistics, Inc. v. Gainey Transp. Servs., Inc.*
   2005 WL 1021443, at *4 (N.D. Cal. May 2, 2005) ......................................16

*Missouri ex rel. Koster v. Harris*
   847 F. 3d 646 (9th Cir. 2017)......................................................................22

*Neilson v. Union Bank of California, N.A.*
   290 F. Supp. 2d 1101 (C.D. Cal. 2003).......................................................10

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*
   86 Cal. App. 4th 303 (2000)...................................................................21, 22

*Parrino v. FHP, Inc.*
   146 F.3d 699 (9th Cir. 1998).........................................................................9

*Pate v. Berkeley (USA) Holding, Ltd.*
   69 F. App'x 875 (9th Cir. 2003)...................................................................21

*Sonner v. Premier Nutrition Corp.*
   971 F.3d 834 (9th Cir. 2020)........................................................................22

*Sussex Fin. Enters. v. Bayerische Hypo-Und Vereinsbank AG*
   460 Fed. Appx 709 (9th Cir. 2011) ..............................................................20

*Walker v. KFC Corp.*
   728 F.2d 1215 (9th Cir. 1984).....................................................................16

**STATUTES**

Fed. R. Civ. P. 12(b)(6) ...........................................................................2, 8

Fed. R. Civ. P. 8(a)(2)..................................................................................8

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Tommy Alastra Production's ("TAP") Complaint arises out of a fundamental breakdown in the relationship between it and its principal Tommy Alastra ("Alastra") and Defendants Perpetual Altruism, LTD ("PA") and its CEO Hugo McDonaugh ("McDonaugh") (collectively "Defendants").[1]    PA initially retained Alastra based on his purported reputation as a Hollywood producer with connections in the entertainment space who could assist PA in the production of non-fungible tokens ("NFTs"), also known as cryptographs.  Unfortunately, not only did Alastra fail to follow through with his purported influence in the entertainment space in facilitating NFT collaborations, he also squandered and/or misappropriated funds PA provided him that were supposed to be used towards the production of NFTs.  When PA began to question and scrutinize TAP's conduct, it retaliated by conjuring the underlying claims alleged in the Complaint regarding purported unpaid commissions, misrepresentations about a purported budget and the need for reimbursement of expenses TAP purportedly incurred in producing NFTs it never delivered.

Since this action was filed, TAP has cycled through four law firms, with several affirmatively withdrawing from representing it.  Whether that series of withdrawals relates to the credibility of TAP's claims is necessarily unknown to PA, but there is a lot of smoke even if PA cannot at this time establish that there is actual fire.  It took TAP close to two years to perfect service on PA, he has not materially attempted service on McDonaugh despite repeatedly being advised of McDonaugh's residence in Portugal.

---

[1] Although McDonaugh has been named as a defendant, he has not yet been served with summons.

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

1    For the reasons discussed herein, TAP's breach of contract, promissory
2  estoppel and fraud claims are all subject to dismissal.

3    TAP's breach of contract claim is subject to dismissal to the extent it is based
4  upon alleged breaches in: (1) refusing to permit Alastra a seat on PA's board; and
5  (2) for purported indemnification of expenses related to alleged NFT production.
6  These claims fail under the express terms of the parties' December 18, 2021
7  Amended Master Agreement (the "AMA").

8    As to alleged board rights, the AMA expressly: (1) limited TAP/Alastra to
9  board "observer" rights; (2) prohibited Alastra from exercising voting authority with
10 respect to board decisions; and (3) gave PA full authority to rescind board observer
11 rights to preserve PA's attorney-client privilege.  TAP's initiation of this litigation
12 gave PA full authority to rescind any board observer rights that were contemplated
13 by the AMA.  As such, there is no basis for TAP to claim an entitlement to be
14 appointed to PA's board, let alone for it to enjoin PA's board from conducting
15 activities without TAP/Alastra's approval.

16   As to alleged indemnification rights, the AMA expressly: (1) prohibited TAP
17 from binding PA to third-party agreements; and (2) provided that TAP was required
18 to obtain PA's express written consent before it incurred any third-party expenses.
19 Because requiring PA to pay these third-party expenses would be tantamount to
20 TAP binding PA to third-party agreements, and there is no allegation that TAP ever
21 sought nor obtained PA's written consent to incur these alleged expenses, the breach
22 of contract claim on this basis also fails.

23   TAP's promissory estoppel and fraud claims are also subject to dismissal
24 under the express terms of the AMA and other operative documents.  Each of these
25 claims is premised on the same general theory that Defendants purportedly promised
26 TAP an alleged budget of $500,000 towards NFT production that was later
27 purportedly increased to $1.5 million under the parties' June 1, 2021 Memorandum

28

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

of Understanding ("MOU"), as well as through certain oral representations made by McDonaugh between June and November 2021. TAP alleges that it purportedly relied on these promises in incurring certain expenses and otherwise performing under the AMA. TAP's promissory estoppel and fraud claims fail for multiple reasons:

First, as a matter of well-established law, TAP cannot enforce the representations made through the parties' MOU because that document expressly states that it is non-binding and that no representation made in the MOU could be enforced until a later formalized written agreement was finalized.

Second, none the alleged representations made by McDonaugh between June and November 2021 are actionable under the AMA. The AMA was executed on December 19, 2021, *after* the alleged representations were made, and the AMA is fully integrated and required a written amendment signed by both parties for the AMA to be modified. As such, TAP expressly acknowledged that it was not relying on any purported representations made by McDonaugh in executing the AMA and it does not allege the AMA was ever amended with respect to the budget TAP was to receive for NFT production.

Finally, and even if the AMA was not integrated, all of the alleged representations made by McDonaugh are non-actionable as a matter of law because none of them relate to then-existing statements of objective fact. Rather, they related to alleged future intention to provide a certain budget to TAP, which statements are not actionable as a matter of law.

## II.    RELEVANT FACTUAL ALLEGATIONS AND BACKROUND

### A.    TAP Alleges The Parties Entered Into A Series Of Agreements

The Complaint alleges that the parties first engaged in collaborations involving cryptograph production in or around 2019 and experienced some success. Compl. ¶ 15. Subsequently, in April 2020, the parties entered into a written

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

"Equity, Compensation, and Revenue Sharing Agreement" (the "Master Agreement" or "MA").  Compl. ¶ 17; *see also* Declaration of Ryan Lapine ("Lapine Decl."), Ex. 1.

The Complaint goes on to allege that in or around June 2021, the parties executed a Memorandum of Understanding (the "MOU").  According to TAP's allegations, the MOU outlined additional obligations relating to TAP's role in PA's business operations.  Compl. ¶ 21.  TAP alleges that in the MOU, PA agreed to outsource a majority of Cryptograph production, content sourcing, and marketing to TAP and to provide a minimum budget of $500,000 for Cryptograph-related activities.  *Id.*  The Complaint further asserts that in the MOU, PA committed to negotiating an executive compensation package for TAP's principal, Alastra, which included a proposed salary and benefits package.  Compl. ¶ 21–22.  Importantly, however, the MOU provides that that the parties would enter into a long form agreement and that the MOU is not legally binding upon the parties.  Lapine Declaration, Ex. 2 (stating the MOU "is not intended to be legally binding upon the parties…").  Significantly, and as contemplated by the MOU, the parties did enter into a long form agreement, namely the AMA.  Lapine Decl., Ex. 3.  The AMA was executed in December 2021.  *Id.*

### B.  TAP's Breach Of Contract Claim Is Based On Selective Citations Of The AMA

TAP's breach of contract claim is based on selective portions of the AMA and fails to attach the entire agreement or cite to the entirety of relevant portions thereof.

First, TAP alleges that it is unequivocally entitled to a "seat" on PA's board. Compl. ¶ 45.  In support of this allegation, TAP relies on paragraph 10 of the AMA.

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

1   *Id.*  Section 10 of the AMA, however, provides that "Alastra[2] shall be entitled, for
2   such time as TAP holds any Warrants or shares in the capital of the Company to (i)
3   designate (but not an obligation to do so) a director to be appointed to the Board,
4   provided that such designee (if other than Mr. Alastra and Mr. Bryan) shall be
5   approved by the Company, with such approval not be unreasonably withheld,
6   conditioned or delated, **or** (ii) observe on a non-voting basis, or appoint one non-
7   voting observer to observe (collectively, an "Observer"), and attend each meeting of
8   the Board, provided, that such Observer (if other than Mr. Alastra and Mr. Bryan)
9   shall be approved by the Company in advance (email to suffice), with such approval
10  not to be unreasonably withheld, conditioned or delayed."  Lapine Decl., Ex. 3 at §
11  10 (emphasis added).

12          Further, Section 10 of the AMA provides that "observers" of PA's board can
13  be removed to preserve attorney-client privileged communications.  Lapine Decl.,
14  Ex. 2 at art. 10 ("[T]he Observer may be excluded from any meeting (or portion
15  thereof) of the Board . . . if: (a) the reason for such exclusion, withholding or
16  redaction is primarily (i) to preserve an attorney-client privilege available to the
17  Company that would be lost absent such exclusion, withholding or redaction…")

18          Second, TAP's breach of contract claim seeks indemnification from PA for
19  expenses and attorney's fees that TAP allegedly incurred by retaining third-party
20  vendors to perform services under the MOU and AMA.  Compl. at ¶ 63-66.  TAP
21  contends PA "refused to indemnify TAP for the costs it incurred in securing key
22  third party vendors for future promised work . . . and caused TAP to incur
23  significant legal fees." *Id.,* at ¶8.  TAP alleges that these third-party vendors were
24  retained "to produce Cryptographs…" *Id.,* at ¶ 28.  TAP further alleges that PA had
25  a contractual duty to "defend, indemnify, and hold harmless TAP for its damages"

26  _____
27  [2] Alastra is defined to include TAP and Mr. Tommy Alastra.  Lapine Decl., Ex. 3 at § 1.
28

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

from these "third parties and TAP's attorney's fees." *Id.,* at ¶ 56.  However, the AMA provides the following pertinent provisions: (1) that "Alastra shall have neither the power nor the authority to negotiate and/or execute agreements on behalf of the Company Group, and Alastra shall not be authorized to bind the Company Group in any way whatsoever"; and (2) that PA would only "reimburse TAP for all reasonable preapproved (in writing) . . . expenses incurred or paid by TAP in connection with the performance of this Agreement, including without limitation, the procurement of . . . Cryptographs…"    Lapine Decl., Ex. 3 at §§ 15, 24. Critically, there is no allegation in the Complaint that Alastra obtained PA's written consent to incur any such expenses, nor could such an allegation be credibly made. Compl. *generally*.

### C.    TAP's Claims Are Otherwise Based on Non-Actionable Statements

TAP also alleges that after the parties executed the MOU, there were discussions between them that expanded upon TAP's expected role and culminated in the execution of the AMA.   Compl. at ¶ 21-22.  Those discussions are the basis of TAP's promissory estoppel and fraud claims and allegedly took place *prior* to the execution of the AMA.  Specifically, TAP's fraud and promissory estoppel claims are based on the following alleged communications:

- In August 2021 when "McDonaugh, on behalf of PA, had a Zoom teleconference with Alastra (representing TAP)" and during that call "McDonaugh confirmed that the budget would be provided, saying 'I'm going to make the money happen.'" Compl. at ¶ 76.

- In the "summer of 2021 following execution of the MOU" when "Mcdonaugh, on behalf of PA" allegedly "represented that half of the impending Series A funding would be dedicated to the Cyrptograph and provided to TAP…" Compl. at ¶ 77.  According to the Complaint, the expected Series A funding was $3 million at the time the

6

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

representation was made but ultimately closed at $7 million. *Id.*

- In the "summer of 2021" when McDonaugh allegedly represented to Alastra that "PA would be providing TAP the budget necessary to grow Cryptograph in 2022 and pay its vendors." Compl. at ¶ 78.

- In late November 2021 when "McDonaugh proposed in a written e-mail that a proposed 'escrow account for indemnification' for TAP would, according to McDonaugh, 'have to be a part of the total $1.5m Cryptograph budget for 2022.'" Compl. at ¶ 79.

TAP alleges these oral representations were "intended to, and did, convey that TAP would be running Cryptograph moving forward and that PA would provide TAP with the resources necessary to do that, including by providing a minimum budget of $500,000 (as set forth in the MOU) that was later increased to $1,500,000. . ." Compl. at ¶ 80. However, the AMA contains the following pertinent provisions that contradict the alleged misrepresentations:

First, the AMA provides a detailed provision regarding how TAP and PA would run Cryptographs moving forward. Specifically, Article 3, titled "Revenue Sharing and Related Terms" details TAP's revenue sharing based upon whether those revenues were derived from former cryptographs, the company cryptographs *or* "Alastra Cryptographs."    Lapine Decl., Ex. 3 at § 3.  "Alastra Cryptograph Revenues" was defined to "mean all of the gross revenues in any way derived on or through the Company Platform received or generated by any member of the Company Group from any Cryptograph that has been produced at any time by Alastra and/or its affiliates, ***other than Prior Cryptographs***…" *Id.*  Further, the "Company Cryptograph Revenues" was defined to "mean all of the gross revenues in any way derived on or through the Company Platform received or generated by any member of the Company Group from any Cryptograph, ***other than Alastra Cryptographs and Prior Cryptographs***. . ." *Id.*   Article 3 therefore clearly

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

1  contemplated that both the Company and Alastra would run the future Cryptographs

2  as the parties delineated between revenues derived from those Cryptographs

3  generated by either the Company *or* Alastra "moving forward." *Id.*

4        Second, the AMA contains detailed provisions of budgeting that contradicts

5  the purported oral misrepresentations alleged by TAP.  Specifically, the AMA states

6  that PA would only "reimburse TAP for all reasonable preapproved ***(in writing)*** . . .

7  expenses incurred or paid by TAP in connection with the performance of this

8  Agreement, including without limitation, the procurement of revenues, business,

9  arrangements, new Creators and their associated Cryptographs (including costs

10 incurred by an Affiliate Lead Generator in performing said tasks), the onboarding of

11 new Affiliate Lead Generators, managing a relationship with a Lead or Affiliate

12 Lead Generator, marketing costs for Company-approved marketing campaigns and

13 other similar business-focused activities."   Lapine Decl., Ex. 3 at § 15 (emphasis

14 added).  The AMA also provides that "Alastra shall have neither the power nor the

15 authority to negotiate and/or execute agreements on behalf of the Company Group,

16 and Alastra shall not be authorized to bind the Company Group in any way

17 whatsoever." *Id.,* at § 24.

18       Finally, the AMA provides that it "shall not be amended or modified except

19 by written instrument signed by both parties. This Agreement contains all the

20 provisions, conditions, understandings, and agreement between the parties hereto

21 with respect to the subject matter hereof and supersedes all other oral or written

22 agreements between the parties hereto." *Id.,* at § 11.

## III.  LEGAL STANDARD

24       A motion to dismiss tests a complaint's legal sufficiency.  Fed. R. Civ. P.

25 12(b)(6).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

26 "short and plain statement of the claim showing that the pleader is entitled to relief."

27 Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain

28

sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 500 U.S. 554, 570 (2007)).  A claim is "plausible" when it pleads facts from which the court can draw a "reasonable inference" that the defendant is liable for the alleged misconduct.  *Iqbal,* 556 U.S. at 677.  Stripped of unsupported legal conclusions, the factual allegations must do more than "create a suspicion of a legal cognizable right of action;" they must "raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  Thus, under Rule 12(b)(6), a complaint must be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal,* 556 U.S. at 663 (quoting *Twombly,* 500 U.S. at 555).  A court must accept all factual allegations pled in the complaint as true, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), but need not accept unreasonable inferences or legal conclusions cast as factual allegations.  *Iqbal*, 556 U.S. at 681; *Twombly*, 550 U.S. at 555.

## IV.  <u>ARGUMENT</u>

### A.  <u>The Court May Properly Consider The Agreements</u>

Where a complaint is premised upon a written document the authenticity of which is not contested, the Court may properly consider that document in evaluating a motion to dismiss in order to "[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), as amended (July 28, 1998) (superseded by statute on other grounds) ("We therefore hold that a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."). *See also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches

the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1114 (C.D. Cal. 2003) (same).

PA brings before the Court the relevant MA, AMA and MOU.  Lapine Decl., Exs., 1-3. There is no reasonable basis for TAP to dispute the authenticity of these documents.  The Complaint is expressly premised upon these documents and quotes them extensively.  Compl. ¶¶ 22, 75 (quoting directly from MOU); *id.,* at ¶¶ 39-43, 45, 49, 53, 57-59 (quoting directly from AMA).  As such, the Court may properly consider the actual documents in their entirety, as opposed to TAP's citations of the documents, in evaluating this Motion.

### B.    TAP's Claim For Breach Of Contract Is Subject To Dismissal To The Extent It Is Based On Board Rights And Indemnification

TAP's breach of contract claim is premised, in part, on alleged breaches of the AMA due to PA's purported refusal to: (1) permit TAP a purported right to act as a director on PA's board; and (2) indemnify TAP for certain third-party obligations and related attorneys' fees it incurred.   Compl. ¶ 63(ii), (v).  However, the express terms of the AMA belie TAP's claim to the extent based on these purported contractual obligations.

### 1.  TAP Does Not Have Board Rights

TAP's claim that it is entitled to exercise any form of control over PA's board or act as a voting director is contrary to Section 10 of the AMA which is entitled "***Board Observer Rights***."  Lapine Decl., Ex. 3 § 10.  The title of this section alone indicates that the parties' contemplated that the full extent of TAP's rights with respect to PA's board would merely be in an observatory capacity.  Indeed, Section 10 of the AMA specifically contemplates that "The Observer shall be entitled to attend and speak at any such meetings of the Board and/or any such committees

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

thereof telephonically with reasonable access to live electronic presentation of the same ***but shall not be entitled to vote on any matters***." *Id.* (emphasis added).

Moreover, Section 10 of the AMA provided PA significant control over the approval of Alastra or any TAP appointee as a director or observer.  *Id.* ("Alastra shall be entitled, for such time as TAP holds any Warrants or shares in the capital of the Company to (i) designate (but not an obligation to do so) a director to be appointed to the Board, provided, that such designee (if other than Mr. Alastra and Mr. Bryan) ***shall be approved by the Company***, with such approval not to be unreasonably withheld, conditioned or delayed, or (ii) observe on a non-voting basis, or appoint one non-voting observer to observe (collectively, an "Observer"), and attend each meeting of the Board, provided, that such Observer (if other than Mr. Alastra and Mr. Bryan) ***shall be approved by the Company*** in advance (email to suffice), with such approval not to be unreasonably withheld, conditioned or delayed." *Id.* (emphasis added).

Most critically, however, PA had express authority to remove or bar from board meetings any TAP director or observer in the event necessary to preserve PA's attorney client privilege.

> Notwithstanding the foregoing, ***the Observer may be excluded from any meeting . . . if: (a) the reason for such exclusion, withholding or redaction is primarily (i) to preserve an attorney-client privilege available to the Company that would be lost absent such exclusion, withholding or redaction***.

*Id.* (emphasis added). Here, it is readily apparent that PA acted within its contractual authority to bar Alastra and TAP from attending board meetings in light of this pending litigation which Alastra initiated against the company.  Indeed, if PA did not bar TAP or Alastra from board meetings under the present circumstances it would undoubtedly risk waiving attorney-client privilege.

### 2. __TAP's Request To Enjoin PA's Board Must Be Dismissed__

TAP's Complaint repeatedly seeks "injunctive relief to prevent PA's board

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

from taking any further action unless and until Alastra is appointed to the board, as is required by the terms of the parties' written agreement, and to invalidate all past actions of the board that have been taken after Alastra was unlawfully refused his board seat."  Compl. ¶ 66, Prayer for Relief ¶ 3.  TAP's injunctive relief request should be dismissed because it contradicts the terms of the AMA, which do not permit TAP or Alastra any decision-making authority over PA's board.  As discussed above, the AMA specifically contemplates that: (1) TAP would only be entitled to "Board Observer Rights"; (2) TAP "***shall not be entitled to vote on any matters***" taken up by PA's board; and (3) PA has express authority to exclude TAP's observer if necessary to preserve attorney-client privilege.  Lapine Decl., Ex. 3 at § 10 (emphasis added).  For any or all of these reasons, the prayer for injunctive relief should also be dismissed.

### 3.  TAP Lacked Authority To Bind PA And/Or Incur Expenses

TAP's breach of contract claim seeks indemnification for expenses it allegedly incurred in retaining certain third-party vendors to perform services with respect to cryptograph production, and certain attorneys' fees purportedly incurred relating to alleged claims asserted by those third parties against TAP.   Compl. at ¶¶ 60-66.  This claim is also subject to dismissal under the express terms of the AMA.

TAP's indemnification claim essentially asks that the Court require PA to pay contractual obligations with third parties that TAP incurred on its behalf.  *Id.,* at ¶ 28. However, the express terms of the AMA expressly prohibited TAP from binding PA to third party contractual obligations.  Lapine Decl., Ex. 3 § 24 ("Alastra shall have neither the power nor the authority to negotiate and/or execute agreements on behalf of the Company Group, and Alastra shall not be authorized to bind the Company Group in any way whatsoever.")  As such, allowing TAP to obtain indemnification for such expenses would be contrary to the terms of the AMA which prohibited TAP from binding PA to such obligations.

Moreover, TAP's allegation that "[t]here was never a requirement or expectation that TAP would notify PA of the details of TAP's agreements with these vendors or get pre-approval of any specific costs or expenses (provided that they fell within the contractual budget provided by PA)" (Compl. at ¶ 29) is contrary to the express terms of the AMA which provides that PA "shall reimburse TAP for all reasonable ***preapproved (in writing)*** . . . expenses incurred or paid by TAP in connection with the performance of this Agreement, including . . . the procurement of revenues, business arrangements, new Creators and their associated Cryptographs…"   Lapine Decl., Ex. 3 at § 15 (emphasis added).  As such, TAP's concession in the Complaint that it never obtained PA's consent to incur the expenses with these third-party vendors is also fatal to its indemnification claim.

## C.    TAP's Promissory Estoppel Claim Fails

"To state a claim for promissory estoppel, a plaintiff must allege: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *J.B. Enterprises Int'l, L.L.C. v. Sid & Marty Krofft Pictures Corp.*, 2003 WL 21037837, at *3 (C.D. Cal. Mar. 3, 2003).

TAP's promissory estoppel claim is premised upon statements contained in the MOU and purported "subsequent correspondence" between June and November 2021 whereby PA purportedly promised to provide a "Cryptograph budget of least $500,000 in the MOU, which it increased to $1.5 million." Compl. ¶ 68.  Initially, and critically, TAP expressly admits in the Complaint that PA provided it with the $500,000 budget described in the MOU in 2021.  *See* Compl. ¶ 30 ("PA did, in fact, transmit [$500,000] . . . between June and October 2021.")  Notwithstanding this glaring admission, and notwithstanding that the MOU says absolutely nothing about a purported $1.5 million budget, TAP cannot hope to enforce the purported promises

contained in the MOU, or statements purportedly made through subsequent communications in 2021, for two key reasons: (1) the MOU expressly states that it "is subject to contract and is not intended to be legally binding upon the parties" (*see* Lapine Decl., Ex. 2 at 1); and (2) the parties subsequently executed the AMA in December 2021 – *after the purported promises regarding a cryptograph budget which the Complaint alleges were all made prior to November 2021* – which agreement is fully integrated (Lapine Decl., Ex. 3 at §11).

## 1.    TAP Cannot Enforce Non-Binding Terms Of The MOU

It is well-established that a promissory estoppel claim will not lie where the alleged promises sought to be enforced were contained in a document that was expressly non-binding.   Indeed, numerous cases in this judicial district have dismissed promissory estoppel claims premised upon alleged promises contained in documents which specifically stated they were non-binding or subject to contract. *J.B. Enterprises Int'l, L.L.C.*, 2003 WL 21037837, at *4 (dismissing promissory estoppel claim because "[t]he Court finds that the Letter of Intent did not contain a clear and unambiguous offer to complete the stock purchase, because it contemplated that the parties would negotiate the Purchase Agreement. The parties never agreed to the Purchase Agreement itself, and thus, the Purchase Agreement was also not a clear and unambiguous promise to complete the stock purchase."); *A.R. Thomson Grp. v. Harbor Seal Inc.*, 2020 WL 3628712, at *5 (C.D. Cal. May 19, 2020) (dismissing promissory estoppel claim because "the LOI was clearly non-binding, including that the parties were 'free to withdraw from further discussions and negotiations at any time and for any reason' prior to a definitive purchase agreement being negotiated and executed, there can be no promissory estoppel based on the allegations."); *Cultiv8 Ints. LLC v. Rezai*, 2020 WL 12893816, at *3 (C.D. Cal. Dec. 17, 2020) (rejecting claim based on letter of intent because "[b]y its plain language, the LOI itself did not create a contractual obligation for Plaintiff to

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

purchase Defendants' equity. The LOI explicitly provides that it is a 'summary of the principal terms with respect to the proposed acquisition' and that the parties would continue negotiating the full terms and conditions of the proposed sale and enter into a full purchase agreement reflecting such terms.")

Here, TAP cannot state a claim for promissory estoppel based on the MOU because the very terms of the MOU state it was non-binding and subject to later contract. Specifically, the MOU expressly states that,

> This Memorandum of Understanding (this "MOU"), dated as of June 8, 2021 (the "Effective Date") - which (apart from the Binding Terms hereunder) *is subject to contract and is not intended to be legally binding upon the parties* - outlines certain key terms upon *which a long form agreement shall be negotiated in good faith* between, Perpetual Altruism Ltd. ("PA") and Tommy Alastra Productions Inc. (together with Tommy Alastra, "TAP").

> The parties acknowledge that *this MOU does not place either of them under an obligation to conclude an agreement to revise the Prior Agreement (as defined below), and no such obligation will arise unless and until a legally binding amendment to each of the Prior Agreements (collectively, the "Amendments") are agreed and executed by the parties.*

Lapine Decl., Ex. 2 at 1 (emphasis added).

Based on the foregoing, and notwithstanding that: (1) TAP admits it was provided the $500,000 budget contemplated by the MOU in 2021 (Compl. ¶ 30); and (2) the MOU simply does not mention any purported $1.5 million budget, TAP cannot seek to enforce promises made in a document that specifically stated it was non-binding as a matter of law.

### 2. Promises Made Prior To The AMA Are Unenforceable

TAP's promissory estoppel claim also fails because it is based upon alleged promises that were subsequently integrated into a binding valid contract with consideration.

Under California law, a promissory estoppel claim cannot stand when a "valid contract, supported by consideration, governs the same subject matter as the alleged

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

1  promise." *Horne v. Harley-Davidson,* 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009).

2  *See also Chavez v. CITImortgages, Inc.,* 2012 WL 12895843, at * 4 (C.D. Cal. Dec.

3  10, 2013) (dismissing promissory estoppel claim which "arises from the same

4  allegations that give rise to the breach of contract claim" because "it is well settled

5  that an action for promissory estoppel cannot lie where a valid contract, supported

6  by consideration, governs the same subject matter as the alleged promise."). This is

7  because "[p]romissory estoppel is not a doctrine designed to give a party to a

8  negotiated commercial bargain a second bite at the apple in the event it fails to

9  prove a breach of contract." *Walker v. KFC Corp.,* 728 F.2d 1215, 1220 (9th Cir.

10  1984).

11      Further, "[w]here the parties to a contract have set forth the terms of their

12  agreement in a writing which they intend as the final and complete expression of

13  their understanding, it is deemed integrated and may not be contradicted by

14  evidence of any prior agreement or of a contemporaneous oral agreement." *Menlo*

15  *Logistics, Inc. v. Gainey Transp. Servs., Inc*., 2005 WL 1021443, at *4 (N.D. Cal.

16  May 2, 2005). *See also EPA Real Est. P'ship v. Kang*, 12 Cal. App. 4th 171, 175

17  (1992) ("The parol evidence rule generally prohibits the introduction of extrinsic

18  evidence—oral or written—to vary or contradict the terms of an integrated written

19  instrument. . . According to this substantive rule of law, when the parties intend a

20  written agreement to be the final and complete expression of their understanding,

21  that writing becomes the final contract between the parties, which may not be

22  contradicted by even the most persuasive evidence of collateral agreements. Such

23  evidence is legally irrelevant.") (internal citation omitted).

24      Here, TAP's promissory estoppel claim is premised upon alleged statements

25  made by McDonough "as late as November 2021" that Defendants would provide

26  TAP with a $1.5 million budget and that TAP would "run" all Cryptograph moving

27

28

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

forward.[3]  Compl. ¶¶ 26, 68.  However, these alleged promises were all supposedly made prior to the AMA's execution.  As such, given that the AMA is an integrated agreement, such alleged misrepresentations are not actionable.

First, as the Complaint admits, the parties executed the AMA on December 18, 2021, well after the purported representations were supposedly made about a $1.5 million budget and that TAP would be "running" the cryptograph moving forward.   Compl. at ¶¶ 35; 75-80.

Second, the AMA contains specific language regarding TAP's role with the cryptographs and the resources PA would provide TAP in that endeavor. Specifically, Article 3 of the AMA governs the parties' revenue sharing arrangement for the underlying cryptographs and provides pertinent definitions that squarely contradict the notion that TAP would be "running" the cryptographs.  That provision defines the term "Cryptographs" to include those "created before, on or after the date of this Agreement" and then defines the term "Alastra Cryptograph Revenues" as those revenues derived "by Alastra and/or its affiliates…".   Lapine Decl., Ex. 3 at § 3.  It also defines the term "Company Cryptograph Revenues" to be those that were not considered "Alastra" or "Prior Cryptographs."  *Id.*  Accordingly, it is clear from the face of the agreement that the parties anticipated and bargained for what would happen with revenues derived from three different sets of cryptographs – the ones derived *prior* to the agreement, the ones derived from Alastra *after* the

_____

[3] Notably, elsewhere in the Complaint, TAP equivocates by stating that it understood as of December 2021 that it would only be provided with a $500,000 budget.  Compl. ¶35 ("In reliance on PA's and MCDONAUGH's representations that TAP would be the production company of record running PA's Cryptograph business, ***that TAP would be provided with a minimum budget of $500,000***, and that TAP would play a crucial role in the development, launch, and growth of myNFT, the parties also agreed to amend the Master Agreement in December 2021") (emphasis added).

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

agreement, ***and the ones derived from the Company without Alastra after the agreement***.  *Id.* (emphasis added).    Thus, the notion that TAP would "run" all cryptographs moving forward is squarely contradicted by the language in the AMA.

Similarly, Article 15 of the AMA governs the budgeting and resources that PA would provide TAP in the procurement of cryptographs.  Lapine Decl., Ex. 3 at § 15 ("Company shall reimburse TAP for all reasonable ***preapproved (in writing)*** travel, entertainment, administrative and other expenses incurred or paid by TAP in connection with the performance of this Agreement, including . . . the procurement of . . . Cryptographs …") (emphasis added).

Third, the AMA is fully integrated and requires a written amendment to modify its terms.    Lapine Decl., Ex. 3 at § 11 ("This Agreement shall not be amended or modified except by written instrument signed by both parties. ***This Agreement contains all the provisions, conditions, understandings, and agreements between the parties hereto with respect to the subject matter hereof and supersedes all other oral or written agreements between the parties hereto***."). *See also id*. § 19 ("The Parties expressly acknowledge and agree that this Agreement and the Warrants shall constitute as of the Effective Date a binding agreement between them, and the Parties by entering into this Agreement fully intend to be legally bound by its terms. ***This Agreement supersedes all prior agreements and understandings between the Parties with respect to the subject matter hereof, including, without limitation, the Prior Agreement***.") (emphasis added).

Accordingly, any notion that TAP relied on extraneous oral or written representations regarding an increased budget and/or whether TAP would "run" cryptographs moving forward are not enforceable promises because the integrated AMA was executed after those representations were purportedly made and the subject matters of the purported promises are addressed directly in the fully integrated AMA.    Notably, TAP does not allege that the purported

18

misrepresentations by PA should be considered significant enough to void the AMA, as might otherwise make the introduction of the extraneous representations relevant or admissible.  Rather, TAP seeks to otherwise enforce the AMA through its breach of contract claim.   Compl. at ¶¶ 60-66.  As such, there is no cognizable basis upon which TAP could claim reliance on the purported representations regarding a budget or running cryptographs about which it complains which were made prior to the fully integrated AMA's execution.

In sum, TAP's promissory estoppel claim is subject to dismissal as a matter of law because: (1) any purported promises made in the MOU are non-binding; and (2) all the promises allegedly made by Defendants were bargained for and supported by considered in the subsequent integrated AMA.

### D.    TAP's Fraud Fails

To allege a claim for fraud under California law TAP must plead: "(a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damages." *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.,* 868 F. Supp. 2d 983, 992 (2012).  The lynchpin of TAP's fraud claim is that TAP relied on oral promises and/or representations made in the MOU and that those representations were made to "induce TAP to enter into the Amended Master Agreement with PA…"  Compl. at ¶ 82.  This is a fraudulent inducement claim. *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.,* 868 F. Supp. 2d at 992 (citing *Duffents v. Valenti,* 161 Cal. App. 4th 434, 449 (2008)) ("To state a claim for fraudulent inducement under California law, a plaintiff must allege that 'the promisor knows what he is signing, but his consent is induced by fraud, mutual assent is present, and a contract is formed, which, by reason of fraud, is voidable.'").

TAP's fraudulent inducement claim fails because: (1) TAP cannot show justifiable reliance as a matter of law; and/or (2) the claim relies on alleged representations that do not concern any then-existing material fact.

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

1         **1.    <u>TAP Cannot Plead Justifiable Reliance</u>**

2         Similar to the promissory estoppel claim, TAP cannot show that it reasonably

3 relied on the statements in the MOU or the other alleged statements made prior to

4 the execution of the AMA that concern TAP "running" the cryptographs and/or

5 budgeting because those alleged statements are contradicted by the express terms of

6 the AMA[4].

7         "A party may not, as a matter of law, reasonably rely on an oral promise that

8 contradicts the plain terms of a written agreement." *Sussex Fin. Enters. v.*

9 *Bayerische Hypo-Und Vereinsbank AG,* 460 Fed. Appx 709, 712 (9th Cir. 2011)

10 (citing *Hadland v. NN Investors Life Ins. Co.,* 24 Cal. App. 4th 1578 (1994) (finding

11 reliance on representation "unjustified as a matter of law" when it conflicted with

12 written contract). *See also Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1201 (9th

13 Cir. 2001) (finding no reasonable reliance where plaintiff's expectations conflicted

14 with the written contract).

15         Here, all of the alleged misrepresentations that underpin TAP's fraudulent

16 inducement claim were allegedly made before the parties executed the AMA and are

17 topics governed by the AMA.   Compl. ¶¶ 75-79.  Specifically, TAP's fraud claim is

18 also based on purported misrepresentations regarding budgeting and "running" of

19 cryptographs – all made either in the MOU or during meetings between June 2021

20 and November 2021. . .   Compl. ¶¶ 75-80.   But those representations are

21 contradicted by the express terms of the subsequently executed and fully integrated

22 AMA.    Lapine Decl., Ex. 3 at § 3 (describing the parties' various roles in

23 procurement of cryptographs and how revenues were to be disbursed depending on

24 which party procured the cryptograph and when it was procured dispelling any

25 

26 [4] To the extent the fraud claim relies on misrepresentations in the MOU, as stated above, those representations are not enforceable under the express terms of the

27 document.  Lapine Decl, Ex. 2.

28 

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

1  notion that, moving forward, TAP would be "running" the cryptographs). *See also*
2  *id.,* at § 15 (describing how and under what circumstances PA would reimburse
3  TAP for procurement of cryptographs, thus, dispelling any notion that TAP would
4  receive $1,500,000 to procure cryptographs).

5      In sum, TAP's fraud claim fails for the same reasons as the promissory
6  estoppel claim; i.e., because the alleged misrepresentations contradict the plain
7  terms of the subsequently executed AMA.  Thus, as a matter of law, it is not
8  reasonable for TAP to allege that it justifiably relied on purported pre-AMA oral
9  representations or purportedly contained in the MOU.

10      ## 2.    <u>Statements Of Future Events Are Not Actionable</u>

11      Even if TAP can show justifiable reliance (it cannot), TAP's fraud claim
12  nevertheless fails because none of the alleged representations regarding the
13  cryptograph budget concern any then-existing material fact. *See* Compl. at ¶¶ 76-80.
14  Instead, all of the alleged misrepresentations concern future events which are not
15  actionable.

16      "The law is well established that actionable misrepresentations must pertain
17  to past or existing material facts." *Cansino v. Bank of America,* 224 Cal. App. 4th
18  1462, 1469 (citing *Gentry v. eBay, Inc.,* 99 Cal. App. 4th 816, 825 (2002)).
19  Therefore, statements "regarding future events are deemed to be mere opinions
20  which are not actionable." *Id.* (citing *Neu-Visions Sports, Inc. v.*
21  *Soren/McAdam/Bartells,* 86 Cal. App. 4th 303, 309-310 (2000)). *See also Green*
22  *Hills Software, Inc. v. Safeguard Scis. & SPC Priv. Equity Partners*, 33 F. App'x
23  893, 895 (9th Cir. 2002) (alleged misrepresentations that defendant was "moving
24  forward with financing," "intended to move forward with financing" and that
25  defendant was "in the process of making an acquisition" were non-actionable as
26  statements of "opinions and expressions of future intent"); *Pate v. Berkeley (USA)*
27  *Holding, Ltd*., 69 F. App'x 875, 876 (9th Cir. 2003) (affirming summary judgment
28

as to fraud claims because "none of the alleged statements involve assertions of past or existing fact."); *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th  at 309–10 ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions.").

Here, each alleged misrepresentation by Defendants described in Paragraphs 76-80 of the Complaint relate to a budget of the business that ***would be*** forthcoming in the future. Compl. ¶ 76 ("I'm ***going to*** make the money happen"); *id*. ¶ 77 ("MCDONAUGH . . . shared a 'road map' document on the screen that . . . represented that half of the ***impending*** Series A funding ***would be*** dedicated to the Cryptograph and provided to TAP"); *id*. ¶ 78 ("PA ***would be*** providing TAP the budget necessary . . ."); *id*. ¶ 79 (PA "assure[d] Alastra that TAP ***would be*** receiving a minimum budget of $1.5M"); *id*. ¶ 80 (alleging that McDonaugh represented that PA "***would be*** running Cryptograph moving forward and that PA would provide TAP with the resources necessary to do that.") (emphasis added).  The alleged misrepresentations, thus, all relate to future-events (i.e., that a budget would be forthcoming or was planned to be provided).   McDonaugh's alleged statements were at most statements regarding future intent to provide financing, or things that were planned to happen, as opposed to representations of then existing facts, which cannot form the basis for a fraud claim as a matter of law.

## V.    LEAVE TO AMEND SHOULD BE DENIED

Leave to amend a complaint should be denied when amendment would be "futile."  *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 839 (9th Cir. 2020) (as amended).   "An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Missouri ex rel. Koster v. Harris,* 847 F. 3d 646, 656 (9th Cir. 2017).

Here, amendment would be futile because, on the face of the agreements and

DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT

timeline of alleged misrepresentations, TAP cannot allege a plausible claim for breach of contract (to the extent based on purported rights to control PA's board or for indemnification), promissory estoppel, of fraud.

## VI.    <u>CONCLUSION</u>

For the reasons stated herein, the Court should dismiss TAP's breach of contract to the extent it is based upon PA's refusal to: (1) permit TAP a seat on PA's board; and (2) indemnify TAP with relation to purported third party claims and related attorneys' fees.    Further, the Court should dismiss TAP's fraud and promissory estoppel claims in their entirety.    The claims should be dismissed without leave to amend.

Dated:  February 20, 2025                    **STEPTOE LLP**


                                        By: */s/ Ryan M. Lapine*
                                            Ryan M. Lapine
                                            Attorneys for Defendants,
                                            HUGO MCDONAUGH AND
                                            PERPETUAL ALTRUISM, LTD

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2024, a copy of the **DEFENDANT PERPETUAL ALTRUISM, LTD'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)** was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


*/s/ Ryan M. Lapine*
Ryan M. Lapine



***Via FedEx***

Ethan Bearman, Esq.
THE BEARMAN FIRM
9460 Wilshire Blvd., Ste. 830
Beverly Hills, CA 90212
Los Angeles, Ca 90036
T:  (747) 232-7626

**DFENDANT PERPETUAL ALTRUISM, LTD'S MOTION TO DISMISS COMPLAINT**