Ryan M. Lapine (SBN 239316)
rlapine@steptoe.com
Danika L. Duffy (SBN 334276)
dduffy@steptoe.com
**STEPTOE LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile:  (213) 439-9599

Attorneys for Defendants
PERPETUAL ALTRUISM, LTD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| TOMMMY ALASTRA PRODUCTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HUGO MCDONAUGH, an individual; PERPETUAL ALTRUISM, LTD a U.K. limited liability company, and DOES 1-20, inclusive,<br><br>Defendants. | CASE NO. 2:25-cv-01257-AB-KES<br><br>Hon. André Birotte, Jr.<br><br>**DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date:         March 28, 2025<br>Time:        10:00 a.m.<br>Crtrm.:      7B<br><br>Action Filed:   February 14, 2025<br>Removal:       February 14, 2025<br>Trial Date:     None Set |

**DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY ISO MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ........................................................................................................2

    A. TAP's AMA Section 10 Breach of Contract and Injunctive Relief Claims Rely on Selective Language and Conclusory Allegations ..................................................................................................3

    B. The AMA's Plain Language Does Not Entitle TAP to Indemnification for Vendor Agreements ...............................................5

    C. Promissory Estoppel Is Inapplicable to The Instant Dispute ..................7

        i. Promissory Estoppel Does Not Apply Where Terms in Negotiations are Not Included in a Fully Integrated Contract ............................................................................7

        ii. TAP Fails to State Claims on which Promissory Estoppel May Be Granted ....................................................................8

    D. TAP's Fraud Claims Cannot Survive the 12(b)(6) Standard ...............10

        i. TAP Does Not Show Reasonable Reliance .....................10

        ii. Unkept Promises Are Not Sufficient to Show Fraud .......10

III. CONCLUSION ................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aceves v. U.S. Bank, N.A.*,
    192 Cal.App.4th 218 (2011) ........................................................................... 7

*Alliance Mortgage Co. v. Rothwell*
    10 Cal. 4th 1226 (1995) ............................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 2, 4, 11

*Aton Center, Inc. v. United Healthcare Ins. Co.*,
    93 Cal.App.5th 1214 (2023) .......................................................................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 2

*California Union Square L.P. v. Saks & Co. LLC*,
    71 Cal.App.5th 136 (2021) ............................................................................ 6

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
    222 Cal.App.3d 1371 (1990) ......................................................................... 5

*Fontenot v. Wells Fargo Bank, N.A.*,
    198 Cal. App. 4th 256 (2011) ........................................................................ 7

*Garcia v. World Savings, FSB*,
    183 Cal.App.4th 1031 (2010) ........................................................................ 7

*Jones v. Wachovia Bank*,
    230 Cal.App.4th 935 (2014) ........................................................................ 10

*Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Authority*,
    23 Cal.4th 305 (2000) .................................................................................... 7

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ....................................................................... 2

*Melican v. Regents of University of California*,
    151 Cal.App.4th 168 (2007) .......................................................................... 4

*Moncada v. West Coast Quartz Corp.*
    221 Cal.App.4th 768 (2013) .......................................................................... 9

**DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY ISO MOTION TO DISMISS COMPLAINT**

1
2   *Riverisland Cold Storage Inc. v. Fresno-Madera Production Credit Assn.*
       55 Cal. 4th 1169 (2013) .................................................................................. 10

3   *Smith v. City and County of San Francisco*,
       225 Cal.App.3d 38 (1990) ................................................................................ 9
4
5   *Walker v. KFC Corp.*,
       728 F.2d 1215 (9th Cir. 1984) .......................................................................... 7

6   **Statutes**

7   Cal. Civ. Code § 1625 ............................................................................................ 8

8   **Other Authorities**
9
10  Fed. R. Civ. P. 9(b) ................................................................................................ 2

11  Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1, 2

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Perpetual Altruism, LTD ("PA") submits this reply in support of its Motion to Dismiss the Complaint of Plaintiff Tommy Alastra Productions, Inc. ("TAP") pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

## I. **INTRODUCTION**

TAP's Opposition contains contradictions and unsupported assertions. The Opposition first takes the position that the Motion is fundamentally flawed due to PA's reliance on "decontextualized citation[s]" to the contracts giving rise to the Complaint's allegations. In the very same sentence, TAP criticizes the Motion for its reliance on "extrinsic evidence." That evidence is the contracts, which TAP selectively quoted, but not attach, to its Complaint; TAP does not dispute the authenticity of those documents. *See* D.E. 16 at 2:6-13. The Court is within its rights to consider the entirety of those documents on a 12(b)(6) motion, not merely TAP's selective quotations from them.

With respect to TAP's claims relating to AMA Section 10, it has not properly stated a claim on which relief can be granted. The Complaint omits relevant contractual language that controls and calls for the relief PA requests.

TAP's breach of contract claims relating to AMA Section 14 are similarly flawed. Here, TAP asks the Court to overlook the plain language of Section 14 itself and the AMA in its entirety to deem its claim plausible.

Finally, TAP has not properly alleged the elements necessary to prevail on its promissory estoppel or fraud claims—nor can it. TAP's claims cannot be founded on non-binding documents, on future promises, or on statements made in the course of negotiations which were not memorialized in a subsequently executed, binding agreement. Yet that is the gravamen of those two claims.

TAP's sesquipedalian rhetoric does not save its claims. Thus, for the reasons stated below and in PA's Motion, PA respectfully asks this Court to dismiss, without leave to amend, (1) TAP's breach of contract claim to the extent it is based upon PA's refusal to: (a) permit TAP a seat on PA's board; and (b) indemnify TAP

with relation to purported third party claims and related attorneys' fees; and (2) TAP's fraud and promissory estoppel claims in their entirety.

## II. ARGUMENT

TAP misconstrues the 12(b)(6) standard in three fundamental ways. First, while the Court must accept all factual allegations in TAP's Complaint as true, it is *not* "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Second, whether TAP's complaint sets forth a "short and plain statement of the claim showing the pleader is entitled to relief" is not the "*only*" question before the Court. *See* D.E. 16 at 4 (emphasis added). Rather, to avoid dismissal under Rule 12(b)(6), TAP must plead "enough facts to state a claim to relief that is plausible on its face[,]" and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft*, 556 U.S. at 678. This is especially true where, as here, TAP has alleged fraud, which requires it to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Finally, in evaluating motions to dismiss pursuant to 12(b)(6), the Court *may* consider documents outside the pleadings when "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document[.]" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). As TAP has not disputed—and cannot reasonably dispute—the authenticity of the Master Agreement ("MA"), the Memorandum of Understanding ("MOU"), or the AMA, attached as Exhibits 1-3 to the Declaration of Ryan Lapine filed in support of PA's Motion ("Lapine Decl."), the Court may properly consider these documents.

### A. TAP's AMA Section 10 Breach of Contract and Injunctive Relief Claims Rely on Selective Language and Conclusory Allegations

With respect to its AMA Section 10 claims, TAP improperly relies on cherry-picked contractual language. But TAP cannot hinge its breach of contract claim, nor its injunctive relief claim, on an incomplete contractual provision. As TAP's opposition points out, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." D.E. 16 at 4 (quoting Cal. Civ. Code § 1641).

Both the Complaint and the Opposition ignore AMA Section 10's modifying language, which "collectively" designates the rights bestowed by romanette (i) *and* (ii) as "Observer" rights. Section 10 explicitly provides that *any* Observer may be "excluded from any meeting." When read in its entirety, it is clear that AMA Section 10 grants honorary board rights—not voting rights. The AMA therefore does not grant the right to a voting position, rendering TAP's breach of contract claim conclusory and precluding TAP from seeking injunctive relief to invalidate the Board's actions. D.E. 1, Ex. 1 at ¶ 63. TAP's omission of crucial AMA Section 10 language is particularly egregious given it first failed to attach the AMA to the Complaint and now argues that the Court cannot review the AMA in assessing the sufficiency of TAP's pleadings. D.E. 16 at 4. TAP cannot claim that the Court is required to accept as true an incomplete recitation of its contractual rights. That it wishes for the Court to disregard the actual contractual language on which it sues speaks volumes.

In addition to relying on incomplete language, the Complaint relies on conclusory allegations, which the Opposition makes no attempt to justify. In relevant part, the Complaint alleges:

> Pursuant to Section 10 of the [AMA], "Alastra shall be entitled . . . to (i) designate (but not an obligation to do so) a director to be appointed to the Board, provided, that such designee (if other than Mr. Alastra . . .) shall be approved by the Company . . ." While Alastra notified PA of

3
**DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY ISO MOTION TO DISMISS COMPLAINT**

his exercise of this right, designating himself as a director to be appointed to the Board (which means that PA has no right of approval over his designation per the language of Section 10 quoted above). PA has refused to even consider his designation or recognize his contractual right, which is a material breach of the Amended Master Agreement.

D.E. 1, Ex. 1 at ¶¶ 45, 46. Irrespective of the rights conveyed by AMA Section 10, this language fails to sufficiently allege that (i) TAP was entitled to the rights set forth in AMA Section 10; or (ii) TAP properly exercised the rights set forth in AMA Section 10.  In omitting this information, TAP has failed to allege enough facts to state a claim for breach of contract or injunctive relief that is plausible on its face.

The first sentence of AMA Section 10—which is excluded from the Complaint—provides that TAP is only entitled to "Board Observer Rights" "for such time as TAP holds any Warrants or shares in the capital of the Company." Lapine Decl. Ex. 3 at 13.  However, the Complaint does not allege that TAP held Warrants or shares in the capital of PA when it attempted to "designat[e]" itself to the Board; thus, TAP has failed to allege it is even eligible for the rights AMA Section 10 bestows.

AMA Section 10 goes on to state that TAP may exercise its Section 10 rights "by service of notice in writing to Brock House, 19 Langham Street, London, England, W1W 6BP or by email to hugo@mynft.com." Lapine Decl. Ex. 3 at 14. Similarly, TAP failed to allege it properly exercised the rights set forth in AMA Section 10, and the Court is not required to accept TAP's threadbare, legal conclusion that it "notified PA" that it would be exercising its AMA Section 10 rights as a correct factual basis. *Ashcroft*, 556 U.S. at 678; *see also Melican v. Regents of University of California*, 151 Cal.App.4th 168, 174 (2007) ("It is well settled a pleader must state with certainty the facts constituting a breach of contract.").

4

**DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY ISO MOTION TO DISMISS COMPLAINT**

TAP cannot properly allege breach of contract, or an entitlement to injunctive relief, if it does not allege facts sufficient to show it was entitled to a contractual right. *See Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1289 (1990) ("Where contractual liability depends upon the satisfaction or performance of one or more conditions precedent, the allegation of such satisfaction or performance is an essential part of the cause of action."). For these technical deficiencies alone, the Court should dismiss TAP's breach of contract claim and injunctive relief claim to the extent they arise out of AMA Section 10.

### B. The AMA's Plain Language Does Not Entitle TAP to Indemnification for Vendor Agreements

TAP's interpretation of AMA Section 14 is overbroad and incorrect. AMA Section 14 is broken-up into multiple subparts, which set forth the circumstances giving rise to indemnification. Lapine Decl. Ex. 3 at 16 – 17. None of these subparts contemplate indemnification for claims arising out of TAP's own contractual obligations. This is evidenced by the plain language of AMA Section 14 and the AMA in its entirety.

AMA Section 14(v) provides indemnification for claims "arising out of" the "production or sale of any Cryptograph or any portion thereof." Lapine Decl. Ex. 3 at 16. TAP argues that this language extends to claims arising out of contracts entered into by and between TAP and third-party vendors. While PA disputes this interpretation, this AMA Section 14(v) is regardless wholly inapplicable to the Complaint's allegations. TAP does not allege that any of the vendor payments at issue relate to the "production" of Cryptographs. It merely alleges that TAP made "financial commitments" to vendors relating to "written and oral retainer agreements." D.E. 1, Ex. 1 at ¶ 31. Ambiguous "retainer" payments—which, indeed, imply a payment for a service that has not yet occurred—made to unspecified vendors have no nexus to the "production" of Cryptographs and do not warrant indemnification pursuant to AMA Section 14(v). Further, by its plain

language, AMA Section 14(vii) only applies to claims arising out of *PA*'s business—it does not extend to business disputes arising out of contracts entered into by and between TAP and a third-party.

When viewed in the context of the AMA in its entirety, AMA Section 14 cannot be read to extend to TAP's contractual obligations. First, allowing indemnification for payments owed pursuant to an agreement between TAP and a third-party essentially nullifies any need for the budget TAP claims it was promised—rather, TAP could seek reimbursement *carte blanche* through AMA Section 14(v). Second, allowing AMA Section 14 to extend to agreements entered into by TAP by way of AMA Section 14(vii) eviscerates AMA Section 24, which prohibits TAP from binding PA to third-party agreements. Lapine Decl. Ex. 3 at 19.

While the Opposition concedes that AMA Section 14 is separate from AMA Section 24, the Complaint's allegations makes it clear that TAP is attempting to use the AMA Section 14 to circumvent AMA Section 24 and bind PA to contracts to which it is not a party. Notably, TAP's Complaint does not even claim it is out of pocket any money with respect to the vendor contracts giving rise to TAP's indemnification claims, which alone should render them inadequate. D.E. 1, Ex. 1 at ¶¶ 31, 37. Instead, TAP alleges it has been "unable to meet financial commitments" relating to "promised retainers," and seeks to have PA make those payments instead. *Id.* at ¶37. This plainly encroaches on AMA Section 24 and renders this provision meaningless. *California Union Square L.P. v. Saks & Co. LLC*, 71 Cal.App.5th 136, 143 (2021) ("Where general and specific provisions [of a contract] are inconsistent, the specific provision controls."). The express language of Section 24 of the AMA calls for this claim to be denied. There is no allegation that PA approved any of these expenses such that they can be obligated to pay them given the express terms of Paragraph 24 of the AMA.

### C. Promissory Estoppel Is Inapplicable to The Instant Dispute

#### i. Promissory Estoppel Does Not Apply Where Terms in Negotiations are Not Included in a Fully Integrated Contract

TAP's contention that the MOU and superseded statements may form the basis of promissory estoppel is contrary to California law and principles of equity. While TAP cites to a slew of cases to argue promissory estoppel may be applied to statements made during negotiations, none of the cases cited involve a party's reliance on a document labeled as "non-binding". *Cf. Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Authority*, 23 Cal.4th 305, 310 (2000); *Garcia v. World Savings, FSB*, 183 Cal.App.4th 1031, 1041-43 (2010); *Aceves v. U.S. Bank, N.A.*, 192 Cal.App.4th 218, 225-27 (2011). Nor do any of the cases referenced allege promissory estoppel based on a term discussed during prior negotiations that was subsequently omitted from the final agreement. *Cf. Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 274-75 (2011).

TAP claims that PA's position—there can be no justifiable reliance on a document deemed "non-binding" or on statements superseded by a long-form agreement—would "effectively nullify the entire doctrine", but this is not correct. Promissory estoppel is simply inapplicable to situations where, such as here, business points raised during negotiations were not incorporated into a final agreement. *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984). To the contrary, TAP's position turns the doctrine on its head, and asks the Court to allow a plaintiff to seek relief with respect to any and all statements made in the course of negotiations which were—intentionally—omitted from a final, binding agreement. This is contrary to the principles of equity promissory estoppel is meant to further and should be rejected.

ii. <u>TAP Fails to State Claims on which Promissory Estoppel May Be Granted</u>

The Complaint does not adequately allege promissory estoppel and the Opposition does nothing to justify the defects in TAP's pleading. First, the Opposition claims the below allegations constitute "clear and unambiguous" promises of payment:

- The language in the MOU—which, by its terms, "is not intended to be legally binding"—stating PA would "provide no less than US$$500K budget *to TAP*." D.E. 1, Ex. 1 at ¶ 22 (emphasis added).
- PA's statement during the negotiation of the long form agreement that would ultimately become the AMA that it would "make the money happen." *Id.* at ¶ 23.
- PA's email during the negotiation of the long form agreement that would ultimately become the AMA which proposed an "escrow account for indemnification" for TAP which would "have to be a part of the *total* $1.5m Cryptograph budget for 2022." *Id.* at 26.

But these allegations themselves are inconsistent and demonstrate no "promise" was ever made by PA, other than those which were memorialized by the AMA. At most, the foregoing language reflects varying statements made as the parties' moved towards a long-form agreement (the AMA)—not unequivocal promises. Moreover, these statements were superseded by the AMA's execution. *See* Cal. Civ. Proc. § 1625 ("The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.").

However, TAP alleges that it blindly took action based on the MOU, which: (i) was explicitly labeled as "non-binding"; (ii) acknowledged the MA, not the MOU, continued to govern all legal rights and obligations between TAP and PA; (iii) expressed not to create new obligations unless and until the MA was amended,

8
**DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY ISO MOTION TO DISMISS COMPLAINT**

as well as these statements of negotiation, which were superseded by the AMA, a binding document which was negotiated and mutually agreed to. D.E. 1, Ex. 1 at ¶¶28 – 33. Promissory estoppel is not proper in these circumstances and, accordingly, TAP cannot allege a proper claim upon which relief can be granted. *See Aton Center, Inc. v. United Healthcare Ins. Co.*, 93 Cal.App.5th 1214, 1244 (2023) ("Estoppel cannot be established from . . . preliminary discussions and negotiations.") (*quoting Granadino v. Wells Fargo Bank, N.A.*, 236 Cal.App.4th 411, 417 (2015)).

Second, TAP does not allege "reasonable" reliance based on prior course of dealing. Rather, it alleges that (i) TAP's previous financial decisions had been taken after a budget was already "set" and (ii) PA had previously had issues with reimbursement payments. D.E. 16 at ¶¶ 28, 30. This course of dealing does not lend support to TAP's position that it was "reasonable" to solicit vendor contracts while budget negotiations were ongoing. *Moncada* does not show otherwise. In fact, in *Moncada*, the California Court of Appeal did *not* find the plaintiffs' reliance was reasonable due to course of dealing—it only stated that plaintiffs, several long-term employees, *did rely* on their employer's statements that they would receive a bonus after the company was sold and, thus, adequately alleged promissory estoppel. 221 Cal.App.4th 768 (2013).

Finally, whether TAP did actually rely on any statements made by PA to TAP's detriment is questionable. Though TAP claims it was promised $1.5 million—D.E. 1, Ex. 1 at ¶ 26—its "payment obligations" are limited to "promised" retainers of only $300,000. *Id.* ¶¶ 31, 37. As discussed in Section B, *supra*, TAP does not claim it actually paid any money with respect to the vendor contracts it purportedly executed after relying on PA's statements. D.E. 1, Ex. 1 at ¶¶ 31, 37. This does not show actual reliance detrimental to TAP. *See Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 48 (1990) (plaintiffs' failure to allege facts demonstrating a change in position fatal to promissory estoppel claims at the

9

**DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY ISO MOTION TO DISMISS COMPLAINT**

pleading stage); *see also Jones v. Wachovia Bank*, 230 Cal.App.4th 935, 947-48 (2014) ("plaintiffs showed no substantial change in position" and therefore failed to show triable issue regarding detrimental reliance.").

### D. TAP's Fraud Claims Cannot Survive the 12(b)(6) Standard

#### i. TAP Does Not Show Reasonable Reliance

TAP's purported "reliance" was not reasonable under the circumstances. The alleged "fraudulent" statements reflect evolving discussions relating to the finalization of a long-form agreement. *See* Section C, *supra*.

The cases cited by TAP do not bolster TAP's "justifiable reliance" argument. *Alliance Mortgage Co.* involved a real estate lender (the plaintiff) who relied on material information from its agent (the defendant), who plaintiff contended was a fiduciary, which turned out to be fraudulent. 10 Cal. 4th 1226 (1995). There, the Supreme Court observed, in *dicta*, that "[t]he nature of the relationship [between the parties] is such as to cause the plaintiff to rely on the fiduciary, and awareness of facts which would ordinarily call for investigation does not excite suspicion under these special circumstances." *Id.* at 1240. It does not stand for the proposition that a plaintiff may justifiably rely on representations that contradict written agreements where there is a general relationship of trust (nor does TAP allege PA served as a fiduciary to TAP).

*Riverisland Cold Storage Inc.* is similarly unhelpful to TAP. 55 Cal. 4th 1169 (2013). There, the California Supreme Court held that "promissory fraud entails more than proof of an unkept promise or mere failure of performance." This does not save TAP, whose Complaint, at most, alleges that payment terms discussed during negotiations were not incorporated into a long-form, binding agreement.

#### ii. Unkept Promises Are Not Sufficient to Show Fraud

While the Opposition claims the alleged "fraudulent" statements "concerned existing facts, not merely future events," each statement cited refer to plans for PA's future, as made during negotiations and discussions relating to the finalized AMA:

10

**DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY ISO MOTION TO DISMISS COMPLAINT**

- "[H]alf the *impending* Series A funding *would be* dedicated to the Cryptograph and provided to TAP." D.E. 1, Ex. 1 at ¶ 24.

- PA "*proposed*" an escrow account that would "*have to be* part of the total" future budget. *Id.* at ¶ 26.

- Discussions of a "road map" document, which inherently shows plans for the future. *Id.* at ¶ 24.

These are far from existing, established policies, as TAP claims. Further, consistent with the other cases cited in TAP's Opposition, *Engalla* does not support TAP's claims. 15. Cal.4th 951 (1997). There, fraud was found when defendants induced plaintiffs into executing an arbitration agreement which defendants had no intention of adhering to, as evidenced by defendants' self-administered arbitration system, which was contrary to the terms set forth in the arbitration agreement. That situation is not comparable to discussions with a business partner in the course of planning for a business's future and finalizing a long-form agreement. To find otherwise would have a significant chilling effect on parties' ability to finalize deal points.

Moreover, the Complaint offers the unsupported, conclusory allegation that PA made promises about the budget and TAP's role without any intention to perform. D.E. 16 at 13 (citing D.E. 1, Ex. 1 at ¶ 81). Here, unlike in *Engalla*, there is no evidence that PA made any promise without an intention of performing. The Court need not accept this baseless legal conclusion as a truthful, factual statement. *Ashcroft*, 556 U.S. at 678.

TAP cannot claim that statements made during the course of negotiations— which were not incorporated into a binding agreement that TAP signed—induced TAP entering into such an agreement. TAP does not allege anything more than a decision not to incorporate certain statements made in negotiations into a long-form agreement. `TAP, by its own account, is a sophisticated party. If it felt the AMA did not accurately reflect the parties' agreement, it should not have executed it. It

11

**DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY ISO MOTION TO DISMISS COMPLAINT**

cannot as a matter of law allege fraud where two corporate entities opted not to include certain terms discussed during a contract negotiation into the final contract. To hold otherwise would be to open every commercial contract up to fraud allegations where, like here, the parties bandied about various terms and conditions, but ultimately agreed to a final contract that may not have included them.

### III.  CONCLUSION

For the foregoing reasons, PA respectfully asks that the Court dismiss, without leave to amend, (1) TAP's breach of contract claim to the extent it is based on PA's refusal to (a) permit TAP a seat on PA's Board and (b) indemnify TAP with respect to third party claims and attorneys' fees, and (2) TAP's fraud and promissory estoppel claims in their entirety.

Dated:  March 14, 2025                    **STEPTOE LLP**


By: */s/ Ryan M. Lapine*
Ryan M. Lapine
Danika L. Duffy
Attorneys for Defendants,
PERPETUAL ALTRUISM, LTD

# CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2025, a copy of the **DEFENDANT PERPETUAL ALTRUISM, LTD'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)** was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                */s/ Ryan M. Lapine*
                                                Ryan M. Lapine

*Via FedEx*

Ethan Bearman, Esq.
THE BEARMAN FIRM
9460 Wilshire Blvd., Ste. 830
Beverly Hills, CA 90212
Los Angeles, Ca 90036
T: (747) 232-7626