Ryan M. Lapine (SBN 239316)
*rlapine@steptoe.com*
Danika L. Duffy (SBN 334276)
*dduffy@steptoe.com*
**STEPTOE LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Attorneys for Defendant
PERPETUAL ALTRUISM, LTD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| TOMMY ALASTRA PRODUCTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HUGO MCDONAUGH, an individual; PERPETUAL ALTRUISM, LTD a U.K. limited liability company, and DOES 1-20, inclusive,<br><br>Defendants. | CASE NO. 2:25-cv-01257-AB-KES<br><br>Hon. André Birotte, Jr.<br><br>**DEFENDANT PERPETUAL ALTRUISM LTD'S OPPOSITION TO COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ALTERNATIVE SERVICE ON DEFENDANT HUGO MCDONAUGH** |
| PERPETUAL ALTRUISM, LTD, a U.K. limited liability company,<br><br>Counterclaimant,<br><br>v.<br><br>TOMMY ALASTRA PRODUCTIONS, INC., a California corporation, TOMMY ALASTRA, an individual, and ROES 1-10, inclusive,<br><br>Counter-Defendants. | Hearing Date:  January 9, 2026<br>Time:  10:00 am<br>Court Rm.  7B<br><br>Action Filed:  February 14, 2023 |

DEFENDANT PERPETUAL ALTRUISM LTD'S OPPOSITION TO COUNTER-DEFENDANTS' MOTION FOR ALTERNATIVE SERVICE ON HUGO MCDONAUGH

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  THE COURT SHOULD DENY PLAINTIFF'S MOTION AND DISMISS THE CASE AGAINST MCDONAUGH FOR FAILURE TO EFFECTUATE SERVICE OR ACT WITH DILIGENCE FOR THREE YEARS ...................................................................................................... 3

    A.   The Proper Order at this Time Would Be to Dismiss this Action Against McDonaugh for Failure to Serve ............................................. 3

    B.   McDonaugh's Knowledge of This Action Does Not Provide a Substitute for Proper Service ................................................................ 7

    C.   The Relief Plaintiff Seeks Does Not Appear to Be Legally Permissible ........................................................................................... 7

III. CONCLUSION ......................................................................................... 9

i

DEFENDANT PERPETUAL ALTRUISM, LTD'S LIMITED OPPOSITION TO PLAINTIFF'S APPLICATION FOR EXTENSION OF TIME FOR SERVICE ON HUGO MCDONAUGH

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Browne v. Donalds*,
   2023 U.S. Dist. LEXIS 126736 (C.D. Cal. April 13, 2023) ................................. 8

*Carey v. King*,
   856 F.2d 1439 (9th Cir. 1988) ................................................................... 5, 6, 10

*In re Eisen*,
   31 F.3d 1447 (9th Cir. 1994) ................................................................................ 6

*Godfrey v. Princess Cruise Lines*,
   2016 U.S. Dist. LEXIS 204782 ............................................................................ 9

*Hale v. Evidencia Display*,
   No. SACV 15-0538, 2015 U.S. Dist. LEXIS 101297, 2015 WL
   4624881 (C.D. Cal. Aug. 3, 2015) ....................................................................... 7

*Link v. Wabash R.R. Co.*,
   370 U.S. 626, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) ................................... 5, 10

*Morris v. Morgan Stanley & Co.*,
   942 F.2d 648 (9th Cir. 1991) ................................................................................ 6

*Pagtalunan v. Galaza*,
   291 F.3d 639 (9th Cir. 2002) ................................................................................ 6

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) .......................................................................... 7, 8

*Smart Study Co. v. Acuteye-US*,
   620 F. Supp. 3d 1382 (S.D.N.Y. 2022) ............................................................ 8, 9

*United Fin. Cas. Co. v. R.U.R. Trans., Inc.*,
   No. 22-333, 2022 U.S. Dist. LEXIS 202831, 2022 WL 16747283
   (S.D. Cal. Nov. 7, 2022) ....................................................................................... 5

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988) ............................................................................................. 7

*Williams v. Bellagio Hotel & Casino*,
   728 F. Supp. 3d 1166 (D. Nev. 2024) .................................................................. 7

**Rules**

Fed. R. Civ. P. 4 ............................................................................................... 3, 7

Fed. R. Civ. P. 4(f) ................................................................................................ 5

Fed. R. Civ. P. 4(f)(3) .................................................................................. 7, 8, 9

Fed. R. Civ. P. 4(h)(2) ........................................................................................... 5

Fed. R. Civ. P. 4(j)(1) ............................................................................................ 5

Fed. R. Civ. P. 4(m) .............................................................................................. 5

Fed. R. Civ. P. 41(b) .............................................................................................. 5

**Other Authorities**

https://privin.net/ ................................................................................................. 4

https://www.fbi.gov/wanted/dt/george-edward-wright;
    https://en.wikipedia.org/wiki/George_Wright_(fugitive) ..................................... 2

https://www.gov.uk/travel-to-eu-schengen-area ..................................................... 4

https://www.jobbatical.com/blog/post-brexit-uk-talent-exodus-british-
    workers-chose-portugal ....................................................................................... 3

www.tracers.com .................................................................................................... 3

## I.     **INTRODUCTION**

Plaintiff filed this case in February of 2023.  (Dkt. No. 1-1.)  Throughout 2023, Defendant Perpetual Altruism ("PA") advised Plaintiff that it must comply with the Hague Service Convention to serve it.  (Dkt. No. 1-11.)  Plaintiff rebuffed those good faith efforts, doubling down on legally invalid service attempts.  (Dkt. No. 1-8.)  In December of 2023, PA succeeded on two motions to quash, with the state court finding that Plaintiff failed to comply with either the Hague Service Convention or California law.  (Dkt. No. 1-36.)

Notably, in 2023, the trial court advised Plaintiff that "actual knowledge of these proceedings" does not excuse a failure to effectuate proper service, to abide by California law, or to abide by the Hague Service Convention.  (*Id.*).  Two years later, in the present motion, Plaintiff repeats that failed argument, which remains as devoid of legal merit now as it did when Plaintiff first asserted it in 2023.

Concomitantly, in November of 2023, PA advised Plaintiff that Hugo McDonaugh moved to Portugal and advised it exactly how to effectuate proper service on McDonaugh in Portugal through the Portuguese Central Authority.  (Dkt. 51-1, ¶2).  Plaintiff's assertion that McDonaugh "relocated from the United Kingdom to Portugal without notification to opposing counsel or the Court" (Motion 4: 25-26) is, quite frankly, a boldfaced lie of the most egregious variety.  Indeed, oral argument on PA's successful motions to quash in December of 2023 centered on whether service in the United Kingdom could proceed against McDonaugh given that he had moved to Portugal, a fact disclosed in writing as well.

As PA's moving papers concede, two years later, Plaintiff has not even attempted to present service documents to the Portuguese Central Authority for service on McDonaugh.  Had it done so, this Motion would be moot.

Had it exercised even that minimal diligence, McDonaugh would have been served years ago.

Plaintiff notes that PA is a party to this action.  As the Court is aware,

1

DEFENDANT PERPETUAL ALTRUISM LTD'S OPPOSITION TO COUNTER-
DEFENDANTS' MOTION FOR ALTERNATIVE SERVICE ON HUGO MCDONAUGH

discovery is open. Plaintiff could have propounded discovery on PA months ago, obtained McDonaugh's address in Portugal from it if for whatever reason it wanted to knock on his door to serve him as opposed to going through the Portuguese Central Authority, and completed service some time ago.

Instead, contrary to its naked assertions in its moving papers, Plaintiff has exercised no diligence at all. It presents no evidence that it attempted service through the Portuguese Central Authority, despite being aware of McDonaugh's residence in that country for over two years, as it has not taken that basic step. It presents no evidence that it propounded basic discovery on PA to obtain McDonaugh's physical address so that it could serve him in person, because it did not exercise that minimal diligence. Plaintiff's motion is the result of, in the best light, hapless flailing that does not call for the relief that it seeks.

Nor is that relief permissible. Email service of process of an American lawsuit on a resident of Portugal appears to violate international law. Indeed, this Court need only review the legal procedural history of Delta Airlines hijacker and convicted murderer George Edward Wright to get a flavor for Portugal's strict adherence to international treaties and law as they relate to extraterritorial judicial proceedings. (https://www.fbi.gov/wanted/dt/george-edward-wright; https://en.wikipedia.org/wiki/George_Wright_(fugitive)).

Finally, the Court should not countenance Plaintiff's attempts to blame McDonaugh or PA for its own utter lack of diligence. Plaintiff states that he was somehow hamstrung by "Defendant's strategic relocation to Portugal and deliberate concealment of his address." McDonaugh concealed nothing, his counsel immediately notified Plaintiff of his relocation to Portugal in November of 2023 and advised it how to serve him, despite having no obligation to do so. (Dkt. 51-1, ¶2). The only thing strategic about his relocation was a strategy to live in a warm, sunny, affordable country as opposed to a cold, rainy, expensive country suffering the predictable financial doldrums occasioned by the historically poor Brexit decision.

"The Great British Exodus" to Portugal for scores of Brits following Brexit was a larger cultural moment brought on by crippling economic pressures having nothing to do with Plaintiff's entirely frivolous claims in this litigation. (https://www.jobbatical.com/blog/post-brexit-uk-talent-exodus-british-workers-chose-portugal). Any suggestion that McDonaugh followed the British masses and moved to Portugal because of this litigation is so delusional that Generation Alpha slang is needed to describe Plaintiff's position – it is "completely delulu."

## II. THE COURT SHOULD DENY PLAINTIFF'S MOTION AND DISMISS THE CASE AGAINST MCDONAUGH FOR FAILURE TO EFFECTUATE SERVICE OR ACT WITH DILIGENCE FOR THREE YEARS

### A. The Proper Order at this Time Would Be to Dismiss this Action Against McDonaugh for Failure to Serve

On July 29, 2025, this Court issued an order to show cause re: dismissal for failure to serve McDonaugh. (Dkt. 38.) The Court provided Plaintiff an extension until January 14, 2026 to serve McDonaugh. (Dkt. 55.)

Since that order issued, Plaintiff has failed to exercise reasonable diligence. It should have timely submitted the complaint to the Portuguese Central Authority to serve McDonaugh under the Hague Convention. It failed to do that. Alternately, it should have immediately served PA with written discovery to obtain McDonaugh's current address if it instead wished to serve him personally, perhaps even seeking to shorten time given the constraints imposed by Rule 4 and the Court's order. It did not seek to shorten time, it failed to serve written discovery at all.

Instead, it used "Tracers," a "cloud-based investigative and data research software tool" "designed to help you find key pieces of information" available from United States public records. (www.tracers.com; See also, Motion 5: 5-12.) Why Plaintiff believed the address of a UK national living in Portugal would appear in a United States public records search strains the imagination.

It claims it tasked an employee of its own lawyer's office, Amy Bearman, to

3
DEFENDANT PERPETUAL ALTRUISM LTD'S OPPOSITION TO COUNTER-
DEFENDANTS' MOTION FOR ALTERNATIVE SERVICE ON HUGO MCDONAUGH

contact "several known associates of Defendant McDonaugh" to ascertain his address in Portugal. (Motion 5: 18-21.) Why did it not just have her draft an interrogatory to PA requesting his address? That would have gotten the job done and quickly. Having a law firm employee make cold calls to "known associates" does not demonstrate diligence. The Court should consider this – how many of Judge Birotte's "known associates" know his home address off the top of their heads and how many would give it to a stranger calling out of the blue.

Plaintiff feigns surprise that McDonaugh does not list his home address on social media. (Motion 5: 22-23.) Who lists their home address on Instagram or LinkedIn or the Facebook for public consumption? (Probably the same people who list their pin code for their ATM card on the same sites.)

Evidently, Plaintiff also employed a private investigative service located in Chandler, Arizona (https://privin.net/) and a process server to try to locate McDonaugh in Portugal. (Motion 5:24 – 6:4.) That Joshua Bridges, a resident of Washington State who works for that Arizona service found "no indication that [McDonaugh] is in Portugal" reflects not on McDonaugh, who lives openly in that country as a registered foreign national, but on the foolishness of employing a small private investigative firm in the western United States to locate an individual living halfway around the world.

Not touching our current domestic immigration moment with a ten-foot pole, a novice gumshoe can find a registered UK national in the EU following Brexit. That ill-conceived legal framework vitiated the freedom for UK citizens to travel on the European continent without restrictions and requires UK citizens to declare as immigrants in the same way Americans or Tunisians or Japanese foreign nationals have long had to when residing in the European Union, to name but a few countries not privy to the benefits of EU citizenship in the Schengen Area. (See, *e.g.,* https://www.gov.uk/travel-to-eu-schengen-area.)

All of this was misguided, in the best light, as, again, Plaintiff could have

either submitted the complaint to the Portuguese Central Authority since 2023 to serve McDonaugh, a registered foreign national, or propound discovery on PA to obtain his address if it wished instead to serve McDonaugh personally.

This, shall we say, lack of urgency, skill, or crafty strategy should not be rewarded.

Pursuant to Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must* dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added). "This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1)[.]" *Id.* "Nevertheless, the time to serve a defendant in a foreign country is not unlimited." *United Fin. Cas. Co. v. R.U.R. Trans., Inc.*, No. 22-333, 2022 U.S. Dist. LEXIS 202831, 2022 WL 16747283, at *3 & n.1 (S.D. Cal. Nov. 7, 2022) (collecting cases imposing "reasonable limits on the time to effect service in a foreign country under the court's inherent authority to manage its docket").

In no scenario would three years fall within reasonable limits as set forth in the collection of decisions cited in the *R.U.R. Trans., Inc.* case.

District courts have the inherent power to achieve the orderly and expeditious disposition of cases by dismissing actions under Federal Rule of Civil Procedure 41(b) for failure to prosecute and failure to comply with a court order. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962). The following factors are relevant to the Court's determination of whether to dismiss an action for failure to prosecute: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988) (citation omitted).

Here, the first two factors favor dismissal of McDonaugh. Plaintiff's failure to

1  serve the Complaint on him – for three years – has made it impossible to move this
2  case toward completion. This hinders the Court's ability to move this case toward
3  disposition and indicates a lack of intent to litigate diligently. *See Pagtalunan v.*
4  *Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) ("The public's interest in expeditious
5  resolution of litigation always favors dismissal").
6      The third factor also weighs in favor of dismissal. A presumption of prejudice
7  to the defendant arises when there is a failure to prosecute diligently. *See In re*
8  *Eisen*, 31 F.3d 1447, 1452-53 (9th Cir. 1994). That presumption may be rebutted
9  where a plaintiff proffers an excuse for delay, but here, Plaintiff cannot offer a
10 credible excuse for failing to present the Complaint to the Portuguese Central
11 Authority at all since 2023 for service on McDonaugh or for failing to serve basic
12 discovery on PA to obtain his address so that it can serve him in person.
13     It is Plaintiff's responsibility to move the case toward disposition at a
14 reasonable pace. *See Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir.
15 1991). Plaintiff has not discharged this responsibility, nor does using a United States
16 records database to find a Portuguese address for a UK national or employing a
17 worker from his lawyer's office to cold call McDonaugh's friends or employing a
18 service of process company or an investigator in the western United States to try to
19 locate his Portuguese address suggest otherwise.  There were two very simple, well-
20 worn paths from A to B and Plaintiff studiously and for years avoided both of them.
21     Finally, the fifth factor weighs in favor of dismissal. In the OSC, the Court
22 expressly warned Plaintiff that a failure to serve may result in dismissal.  The Court
23 offered a less drastic remedy, an extension of time to serve, and Plaintiff still failed
24 to serve written discovery or attempt service through the Portuguese Central
25 Authority.  Dismissal at this juncture is proper.
26     Balancing all of the *Carey* factors, the proper remedy at this time is not to
27 give Plaintiff a get out of jail free card that likely violates international law, but to
28 dismiss this action as to McDonaugh for failure to properly serve him for almost

three years.  (We are not just beyond the ninety-day mark.  Plaintiff has had since early 2023, a full year before Shohei Ohtani signed with the Dodgers, to serve Plaintiff.)

### B. McDonaugh's Knowledge of This Action Does Not Provide a Substitute for Proper Service

In 2023, Plaintiff argued that constructive notice to McDonaugh should relieve it of its service obligations, a contention the state court affirmatively rejected.  (Dkt. No. 1-36.)   It again alludes to that position in Section III.C.

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4.  While the rule is flexible, without substantial compliance with Rule 4 neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction." *Williams v. Bellagio Hotel & Casino*, 728 F. Supp. 3d 1166, 1168 (D. Nev. 2024) (cleaned up, internal citations omitted).

That McDonaugh may know of this action through his affiliation with PA is of no legal moment.  Absent substantial compliance with Rule 4 – and here there has been no compliance – the Court lacks personal jurisdiction over the UK national and Portugal resident, McDonaugh.

### C. The Relief Plaintiff Seeks Does Not Appear to Be Legally Permissible

While the district court has the "sound discretion" to authorize alternative methods of service under Rule 4(f)(3), these alternative means granted by the district court must (1) "not be prohibited by international agreement;" and (2) "comport with constitutional notions of due process."  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002).

"[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705, (1988).  Portugal is a signatory to the Hague Convention.  *Hale v. Evidencia*

*Display*, No.: SACV 15-0538, 2015 U.S. Dist. LEXIS 101297, 2015 WL 4624881, at *3 (C.D. Cal. Aug. 3, 2015) ("According to the U.S. Department of State, Portugal is a party to the Hague Convention.")

"As numerous courts have recognized, binding Supreme Court precedent indicates that the Hague Convention outlines specific methods of service, and that methods of service that are not specifically authorized are impermissible under the Convention." *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1393 (S.D.N.Y. 2022). "[S]ome courts have determined that service via email, regardless of a country's objections, is precluded under the Hague Convention." *Id.* at 1394. It is without doubt that the Hague Convention does not specifically authorize email service. *Id.*

While Courts in the Ninth Circuit have approved service by email as substituted services under Rule 4(f)(3) when it is "the method of service most likely to reach" the defendant, specifically an "elusive international defendant," the leading Ninth Circuit authority that permitted such service involved service in Costa Rica, which is not a signatory to the Hague Convention, such that its prohibition on email service did not apply. *See Rio Props., Inc.*, 284 F.3d at 1016.

McDonaugh, of course, has not "made himself impossible to locate physically" as Plaintiff falsely claims, he registered as a foreign national in Portugal as he must following Brexit, he is anything but elusive. And unlike in cases where a defendant truly cannot be located, Plaintiff served PA, permitting it to propound discovery and obtain McDonaugh's address even where it employed the least competent investigators this side of Inspector Clouseau who were not up to the task.

Plaintiff cites to *Browne v. Donalds*, 2023 U.S. Dist. LEXIS 126736 (C.D. Cal. April 13, 2023) for the contention that "Portugal has not objected to email service." (Motion 8:6-7.) That citation is to a denial by the Honorable André Birotte, Jr. of an *ex parte* application for failure to comply with the Central District Local Rules. There is no indication that any of the parties in that case reside in

8
DEFENDANT PERPETUAL ALTRUISM LTD'S OPPOSITION TO COUNTER-
DEFENDANTS' MOTION FOR ALTERNATIVE SERVICE ON HUGO MCDONAUGH

Portugal (a cursory review of them, including De La Ghetto (representing The Boogie Down Bronx), Ricky Martin (representing Puerto Rico), and Anitta (holding it down for Brazil), suggests they do not), much less any finding that Portugal has not objected to email service. That Court did not even consider that issue.

Nor does the other case to which Plaintiff cites to support that contention fare any better. The Court in *Godfrey v. Princess Cruise Lines*, 2016 U.S. Dist. LEXIS 204782, *5 addressed email service where the Russian Federation has objected to the methods of service listed in Article 10 of the Hague Convention. That case does not address Portugal or service in Portugal. It certainly does not conclude that "Portugal has not objected to email service."

There is no authority before the Court as to whether Portugal permits an expansion of the Hague Convention beyond its four corners to permit email service even though it is not specifically authorized thereunder. PA is unaware of any authority to suggest Portugal permits expansion of the Hague Convention to allow for email service and despite a diligent search has found no legislative or legal record to suggest that it has taken any position on the matter.

What is known is that Portugal, as evidenced by, *inter alia*, the George Wright case demands strict compliance with international law, refusing to extradite a convicted murderer and commercial airline hijacker where the four corners of extradition treaties did not permit extradition because he had obtained Portuguese citizenship. As Portugal was unwilling to expand international law to extradite an actual murderer living in its midst, it strains credibility to assume it would permit expansion of the Hague Convention to excuse Plaintiff's lack of diligence in the service of process of an American civil lawsuit.

Following the finding in *Smart Study Co.*, the Court should not permit email service under Rule 4(f)(3) given the limitations of the Hague Convention.

### III. CONCLUSION

Plaintiff had all of 2023 to attempt service on McDonaugh. It had all of 2024

to do so. And all of 2025. It failed for three years to affect service on McDonaugh. At some point, this charade must end.

This is not because McDonaugh was hard to find – his counsel disclosed to Plaintiff where he was and how to serve him in November of 2023 – but because Plaintiff failed to exercise minimal diligence for years.

The Court issued an order to show cause re: dismissal and permitted Plaintiff additional time to complete service. Instead of propounding discovery to obtain McDonaugh's address to complete service or working through the Portuguese Central Authority, Plaintiff had an employee of his law firm cold call people who might know McDonaugh and retained a small investigative service in Arizona to find McDonaugh in Portugal. Under *Carey* and *Link*, the proper course of action at this time is to dismiss this case as to McDonaugh for lack of service of process for three years, not to permit email service which appears to violate international law. Plaintiff respectfully requests that the Court deny Plaintiff's motion in full.

Dated: December 19, 2025      **STEPTOE LLP**

By: */s/ Ryan M. Lapine*
　　　Ryan M. Lapine
　　　Danika L. Duffy
Attorneys for Defendant
PERPETUAL ALTRUISM, LTD

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, a copy of **DEFENDANT PERPETUAL ALTRUISM LTD'S OPPOSITION TO COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ALTERNATIVE SERVICE ON DEFENDANT HUGO MCDONAUGH** was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by personal service to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

*/s/ Ryan M. Lapine*
Ryan M. Lapine